# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FELICIA BIRKS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>YRC, INC., )<br>)<br>Defendant. ) | No. 13 C 9296 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Felicia Birks has sued YRC, Inc. alleging disability discrimination under the Americans with Disabilities Act (ADA), interference with her rights under the Family and Medical Leave Act (FMLA), and retaliation for exercising her FMLA rights. 42 U.S.C. § 12112(a); 29 U.S.C. § 2615(a). YRC has moved for summary judgment on all of Birks's claims. For the reasons stated below, the Court grants YRC's motion.

## Background

Felicia Birks worked as a dock supervisor at YRC's freight yard in Chicago Heights, Illinois from September 27, 2011 until she was terminated on May 2, 2013. Among other tasks, Birks was responsible for making sure freight was properly moved between trailers, ensuring that expedited freight loads were serviced in a timely manner, and surveying the trailers and docks to make sure they were safe and operational. Birks was not a member of a labor union, and her employment was "terminable at the will of either the employee or the company, at any time, without notice, cause or any

specific disciplinary procedures." Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. 2.

On February 19, 2013, Birks submitted a request for intermittent FMLA leave. As part of her request, Birks submitted a note from her physician, which indicated that she might need to miss work due to episodic flare-ups caused by multiple sclerosis. YRC approved Birks's request one week later. Birks did not request any actual FMLA leave before she was terminated on May 2, 2013.

Birks was issued a number of "discussion reports" before and after her request for FMLA leave. For instance, in June 2012, Birks was reported for failing to maintain a clean workspace and for failing to inspect a trailer before it was moved. In early February 2013, before she submitted her FMLA request, Birks was issued a discussion report for failing to follow the company's light load procedures. After submitting her FMLA request, Birks received roughly nine more discussion reports.[1] Additionally, YRC placed Birks on a corrective action plan due to absenteeism on February 9, 2013.

On May 1, 2013, roughly one hour before her twelve-hour shift ended, Birks noticed a defective dock door in her assigned area. She did not report the defect, although she admits that she knew she was supposed to do so. In an e-mail to Bryan Johnston, the dock supervisor who took over the next shift, Birks stated, "I just didn't get a chance to send maintenance an email." Id., Ex. 9.

When Birks arrived at work the next day, terminal manager Tim McKinstry informed her that she had been terminated. McKinstry contends that the reason for her

---

[1] YRC highlights twelve discussion reports in its memorandum, although the company has provided additional reports. It appears that Birks did not sign those reports and that another person with different handwriting signed her initials. Although Birks has not challenged those reports in her brief, she stated during her deposition that she did not recognize the signature on them. The Court has not considered those additional reports.

2

termination was her failure to report a safety defect. Birks contends that McKinstry told her she was fired because someone had been injured. Although YRC does claim that an employee suffered a back injury from the defective door, the company maintains that the primary reason for Birks's termination was failure to report a safety hazard. Birks disputes whether anyone was actually injured, although she has no personal knowledge and has offered no evidence about this point.

Birks alleges that McKinstry decided to terminate her because of her disability and her FMLA request.

## Discussion

A party is entitled to summary judgment if it shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**A.    FMLA interference**

Birks cannot maintain an action for FMLA interference because YRC did not deny her FMLA benefits. To prevail on her interference claim, Birks "must demonstrate that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was

3

entitled." *Brown v. Auto. Components Holdings, LLC*, 622 F.3d 685, 689 (7th Cir. 2010). It is undisputed that YRC granted Birks's request for intermittent FMLA leave and that she did not request FMLA leave before she was terminated. Thus, YRC never denied Birks any FMLA benefits. Further, Birks has abandoned her interference claim by failing to address the issue in her response brief. *See Delapaz v. Richardson*, 634 F.3d 895, 900 (7th Cir. 2011). YRC is entitled to summary judgment on Birks's FMLA interference claim.

**B.     Birks's disability**

To survive summary judgment on her disability discrimination claim, Birks must raise a triable issue that she was disabled and that McKinstry knew about the disability. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 600 (7th Cir. 2011); *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). YRC contends that she has not met either requirement.

Contrary to YRC's argument, Birks has raised a triable issue that she is disabled. An individual is disabled under the ADA if she has (i) a physical or mental impairment that substantially limits one or more major life activity; (ii) a record of such an impairment; or (iii) is regarded as having such an impairment. 29 C.F.R. § 1630.2(g)(1). The ADA's implementing regulations state that "it should easily be concluded" that "multiple sclerosis substantially limits neurological function." *Id.* § 1630.2(j)(3)(iii). The Seventh Circuit cited those regulations in a recent unpublished opinion and concluded that a plaintiff who suffered from multiple sclerosis was "likely disabled for purposes of the ADA." *Dactelides v. Bd. of Sch. Trs. of S. Bend Cmty. Sch. Corp.*, 562 F. App'x 534, 536 n.1 (7th Cir. 2014). YRC does not challenge Birks's diagnosis or her

4

physician's report that she might need to miss work because of the disease. During her deposition, Birks stated that she suffers from tingling, numbness, blurred vision, and tight muscles. Birks has also submitted a declaration stating that the disease causes extreme fatigue and migraines and that her daughter has to perform household tasks when she experiences those symptoms. Based on this information, a reasonable jury could find that Birks is disabled.

YRC also argues that McKinstry, who made the decision to terminate Birks, did not know that she had multiple sclerosis. McKinstry admits that he knew about Birks's FMLA request, though he claims that he did not know about her diagnosis. Given that employees in the human resources department unquestionably knew that Birks suffered from multiple sclerosis, a jury reasonably could infer that McKinstry learned about her disease when he consulted human resources prior to firing her.

**C.     FMLA retaliation and disability discrimination**

The Court addresses Birks's retaliation and discrimination claims together, as both involve the same factual allegations. Birks contends that her disability and her FMLA request were motivating factors in YRC's decision to terminate her employment.

Birks can proceed on her FMLA retaliation and disability discrimination claims under either the direct or indirect method of proof. To present a prima facie case of FMLA retaliation using the direct method, Birks must present evidence of (1) a protected activity, (2) a materially adverse action taken by her employer, and (3) a causal connection between the two. *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014) (internal quotation marks omitted). The analysis is similar for her ADA discrimination claim. Under the direct method, Birks must present evidence that (1) she

5

is disabled under the ADA, (2) she is qualified to perform the essential functions of the job, and (3) she suffered an adverse employment action because of her disability. *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014).

To proceed under the indirect method, Birks must present evidence that (1) she engaged in protected activity (for the FMLA retaliation claim) or is disabled (for the disability discrimination claim), (2) she was meeting YRC's legitimate employment expectations, (3) she suffered a materially adverse employment action, and (4) she was treated less favorably than similarly situated employees who did not make an FMLA request (for retaliation) or were not disabled (for discrimination). *Langenbach*, 761 F.3d at 800; *Bunn*, 753 F.3d at 685.

As discussed above, a reasonable jury could find that Birks is disabled. YRC does not contend that she was unqualified to perform the essential functions of her job, nor does the company dispute that Birks's FMLA request is a protected activity. It is also undisputed that Birks suffered a materially adverse action when she was terminated. Thus, to survive summary judgment under the direct method, Birks must present evidence from which a reasonable jury could find a causal connection between her termination and her FMLA request or disability. To survive summary judgment under the indirect method, she must present evidence from which a reasonable jury could find that she was meeting YRC's expectations and was treated less favorably than a similarly situated employee.

### 1. Direct method

To proceed under the direct method, Birks must raise a triable issue that her termination was motivated by her FMLA request or her disability. She has not pointed

6

to a direct admission by YRC. Thus, she must present what a reasonable jury could find to be a "convincing mosaic of circumstantial evidence" that supports an inference of causation. *Langenbach*, 761 F.3d at 800. This "can include suspicious timing, ambiguous statements from which retaliatory [or discriminatory] intent can be inferred, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Id.*; *Bunn*, 753 F.3d at 684.

Considering the evidence as a whole, no reasonable juror could conclude that Birks's termination was causally related to her multiple sclerosis or her FMLA request. Birks relies on the temporal proximity between her FMLA request and her termination as evidence of causation. Just over two months separated the two events. The Seventh Circuit has stated that "when there is corroborating evidence of retaliatory motive . . . an interval of a few weeks or even months may provide probative evidence of the required causal nexus." *Coleman v. Donahoe*, 667 F.3d 835, 861 (7th Cir. 2012).

However, Birks has not presented sufficient corroborating evidence of retaliatory or discriminatory motive. She argues that she was given "shifting" and "inconsistent" reasons for her termination. Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 10–11. Specifically, McKinstry told Birks that she was terminated because someone was injured, whereas during his deposition he stated that her termination was because of her failure to report a safety defect. Birks also argues that the only reason listed on her notice of termination—"cardinal sin"—is a meaningless term that is not in the YRC code of conduct. *Id.* at 7–8.[2] McKinstry defined a cardinal sin as when "you do not report a safety defect immediately," *id.*, Ex. 3 at 37:1–3, whereas Ed Calderon, Birks's

---

[2] Neither party has provided the Court a copy of Birks's notice of termination.

supervisor, defined the term as "when you are not given prior warning and you are terminated." *Id.*, Ex. 2 at 50:6–7. Despite the varying definitions of "cardinal sin," Birks does not dispute that she failed to report the defective door. Nor does she dispute that the company's code of conduct requires employees to "bring[] all unsafe conditions . . . to the attention of the appropriate supervisor or manager." Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. 3 at 85. Regardless of whether the term "cardinal sin" is known by all employees, management has consistently maintained that Birks was terminated for failure to report a safety violation. No reasonable jury could find shifting or inconsistent justifications.

Birks argues that the corrective action plan issued on February 9, 2013 concerned absences, as opposed to safety violations, and is therefore a "non-starter." Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 6. But Birks's termination occurred after she received twelve signed discussion reports, a number of which did relate to safety violations.[3] For instance, in June 2012 she failed to keep her area clean, in February 2013 she put the wrong hazardous materials information on a placard, and in April 2013 she failed to list dangerous materials on a placard. In sum, Birks has not presented evidence that would allow a reasonable jury to infer that her termination was caused by anything other than a safety violation.

Birks next argues that Bryan Johnston is a similarly situated employee without a disability or FMLA request who was treated better than she was. Johnston was the

---

[3] Birks disputes YRC's characterization of the discussion reports as discipline; she argues that they were "essentially coaching." Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 6. She does not dispute the contents of the reports. Despite Birks's protests, it is clear that these reports addressed areas in which Birks failed to perform some aspect of her job in a satisfactory way.

8

dock supervisor on duty after Birks on May 1, 2013.  The injury occurred two hours into his shift.  Birks contends that McKinstry's failure to terminate Johnston after he did not report the defective dock door is circumstantial evidence that her termination was motivated by her disability and her FMLA request.  YRC responds that there is no evidence that Johnston was not disabled or that he did not report the defective door.  But even assuming Johnston was disabled and did not report the defect, Birks and Johnston's safety violations are materially different.  YRC observes—and Birks concedes in her response—that there is no evidence that Johnston knew about the defective dock door.  Although Johnston's "utter failure to notice the condition" may be a violation of YRC's policies, his violation differs from Birks's violation.  Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 9.  Birks knew of the safety defect and failed to report it, which was a clear violation of YRC's code of conduct.  Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. 3 at 85 ("Each employee is charged with the responsibility of bringing all unsafe conditions . . . to the attention of the appropriate supervisor or manager.").  Johnston, on the other hand, failed to notice the defect.  Birks points to no portion of the code of conduct that prohibits failure to notice a safety violation.  Because his conduct differed from Birks's, Johnston is not an appropriate comparator.

Birks also contends that McKinstry knew about other employees' safety violations that caused injuries but only terminated her.  Birks has not provided the names of any employees who committed safety violations or details about those violations.  She points to McKinstry's deposition testimony, during which he testified that previous safety violations by unionized employees did not result in termination.  But McKinstry stated that Birks was the only non-union employee that he knew of who failed to report a

9

known safety hazard. Birks has not offered evidence that these employees are appropriate comparators. Although neither party has provided the Court information about the disciplinary process for unionized employees, the discipline of unionized employees is generally governed by a collective bargaining agreement, whereas discipline of a non-unionized employee like Birks is governed by her employment contract. *See Milloy v. WBBM-TV, Chi.*, 613 F. Supp. 2d 1035, 1037 (N.D. Ill. 2009) (concluding that an employee was not similarly situated to the plaintiff because the proposed comparator was "a union member subject to the protective provisions of a collective bargaining agreement when it comes to discipline (as [the plaintiff] was not)"). Without evidence that the disciplinary process at YRC was similar for unionized and non-unionized employees, non-unionized employees cannot be similarly situated.

Finally, Birks points to statements made by her supervisor, Ed Calderon, about the effect an employee's absence would have on YRC's productivity. Calderon stated that an employee's absence makes operation of the facility more difficult. But he did not mention FMLA leave, disability, or even Birks specifically. This common sense observation does not support the inference that McKinstry terminated her because she might take FMLA leave in the future. Additionally, Calderon was not the decision maker who fired Birks. Although he was present when she was terminated, he testified during his deposition that he did not know what the meeting concerned before entering the room, he was not involved in the investigation of Birks's safety violation, and he played no role in the decision to terminate her. Pl.'s Mem. in Opp'n to Mot. for Summ. J., Ex. 2 (Calderon Dep.), at 53:2–56:16. Birks does not dispute that McKinstry was the only decision maker. Thus, even if Calderon's comment was evidence of illicit motive, it

cannot support Birks's claims because he was not involved in the decision making process.

Considering this evidence as a whole, no reasonable juror could find that Birks's FMLA request or her disability was causally connected to her termination. Thus, she cannot proceed with her disability discrimination or FMLA retaliation claim under the direct method.

### 2. Indirect method

Birks's claims also fail under the indirect method because she has not identified a similarly situated employee. For the same reasons that Bryan Johnston is not similarly situated under the direct method, he is not similarly situated under the indirect method. *See Coleman*, 667 F.3d at 860 n.8 (noting that the analyses of similarly situated employees under the direct and indirect methods overlap). As discussed above, Birks and Johnston's alleged safety violations differ. Birks argues that Johnston failed to notice the defective door. Unlike Johnston, Birks knew about the safety defect and failed to report it to maintenance, which was a violation of the company's code of conduct. Accordingly, Birks cannot survive YRC's motion for summary judgment under the indirect method.

## Conclusion

For the foregoing reasons, the Court grants YRC, Inc.'s motion for summary judgment [dkt. no. 16].

                                                                                               _____
                                                                                               MATTHEW F. KENNELLY
                                                                                               United States District Judge

Date: January 29, 2015